**[NOT SCHEDULED FOR ORAL ARGUMENT]**

No. 25-5188

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

GIFFORDS,

*Plaintiff-Appellee,*

*v.*

FEDERAL ELECTION COMMISSION,

*Defendant-Appellee,*

————————————

NATIONAL RIFLE ASSOCIATION OF AMERICA, et al.,

*Appellants.*

————————————

On Appeal from the United States District Court
for the District of Columbia, No. 1:19-cv-01192-EGS

————————————

BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*

————————————

BRETT A. SHUMATE
 *Assistant Attorney General*

CHARLES E.T. ROBERTS
 *Counsel to the Assistant Attorney*
  *General*
 *Civil Division, Room 3617*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 305-1141*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.      Parties and Amici

The appellants in this Court and the movants in the district court are the National Rifle Association of America and the National Rifle Association of America Political Victory Fund (collectively, "NRA").  The appellee in this Court and plaintiff in the district court is Giffords.  The appellee in this Court and defendant in the district court is the Federal Election Commission.

*Amici* in this Court are the Institute for Free Speech and the United States.

### B.      Rulings Under Review

The rulings under review are identified in the parties' briefs.

### C.      Related Cases

This case has not previously been before this Court, and undersigned counsel is aware of no other related cases currently pending in this court or in any other court, except as described in Appellants' Certificate as to Parties, Rulings, and Related Cases.

*/s/ Charles E.T. Roberts*
Charles E.T. Roberts

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES..........i

    A.    Parties and Amici ...............................................................i

    B.    Rulings Under Review.......................................................i

    C.    Related Cases ......................................................................i

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES...................................................iii

GLOSSARY ...............................................................................i

INTEREST OF *AMICUS CURIAE*......................................1

STATUTORY BACKGROUND..............................................1

ARGUMENT..............................................................................6

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Campaign Legal Ctr. v. 45Committee, Inc.*,
118 F.4th 378 (D.C. Cir. 2024) ................................................................ 3, 4, 11

*Campaign Legal Ctr. v. FEC*,
No. 1:21-cv-0406-TJK (D.D.C. June 6, 2022) .................................................. 9

*Campaign Legal Ctr. v. FEC*,
No. 1:20-cv-0809-ABJ, 2021 WL 5178968 (D.D.C. Nov. 8, 2021) ................ 9

*Campaign Legal Ctr. v. Iowa Values*,
691 F. Supp. 3d 94 (D.D.C. 2023) .................................................................... 5

*Combat Veterans for Cong. Political Action Comm. v. FEC*,
795 F.3d 151 (D.C. Cir. 2015) ...................................................................... 2, 3

*CREW v. Am. Action Network*,
410 F. Supp. 3d 1 (D.D.C. 2019),
*on reconsideration*, 590 F. Supp. 3d 164 (D.D.C. 2022),
*appeal docketed*, No. 22-7038 (D.C. Cir.) ........................................................ 4

*CREW v. FEC*,
55 F.4th 918 (D.C. Cir. 2022) ........................................................................... 9

*CREW v. FEC*,
993 F.3d 880 (D.C. Cir. 2021) ........................................................................... 3

*FEC v. Democratic Senatorial Campaign Comm.*,
454 U.S. 27 (1981) ............................................................................................. 2

*Heritage Action for Am. v. FEC*,
682 F. Supp. 3d 62 (D.D.C. 2023),
*aff'd on other grounds sub nom. Campaign Legal Ctr. v. Heritage Action
for Am.*, No. 23-7107, 2025 WL 222305 (D.C. Cir. Jan. 15, 2025) ............. 5, 9

*Van Hollen v. FEC*,
811 F.3d 486 (D.C. Cir. 2016) ...................................................................... 1, 2

**Statutes:**

52 U.S.C. § 30106 ............................................................................................ 2

52 U.S.C. § 30109 ...................................................................................... 2, 3, 4

Federal Election Campaign Act Amendments of 1976,
Pub. L. No. 94-283, § 313(a)(9)(C), 90 Stat. 475 (1976) .................................. 4

**Rules and Regulations:**

*Ending the Weaponization of the Federal Government*,
90 Fed. Reg. 8,235 (Jan. 20, 2025) ...................................................... 6

Fed. R. Civ. Proc. 60(b) ......................................................................... 7

**Legislative Materials:**

*Hearing before the Senate Committee on Rules and Administration*,
117th Cong., 2d Sess. (2022) (S. Hr'g 117-237) .............................................. 4

**Other Authorities:**

FEC, *Statement of Chairman Allen J. Dickerson and Commissioners Sean J.
Cooksey and James E. "Trey" Trainor, III Regarding Concluded
Enforcement Matters* (May 13, 2022) ................................................... 5, 6, 7, 10

FEC, *Statement of Reasons of Commissioner Ellen L. Weintraub, MURs 7427,
7497, 7524, 7553, 7558, 7560, 7621, 7654 & 7660* (Sept. 30, 2022) ............... 11

Office of Att'y Gen., *Restoring the Integrity and Credibility of the
Department of Justice* (Feb. 5, 2025) .................................................. 6

## GLOSSARY

FECA                        Federal Election Campaign Act

FEC                         Federal Election Commission

# INTEREST OF *AMICUS CURIAE*

The United States has a substantial interest in preventing the weaponization of Federal agencies and authorities to achieve partisan political objectives or other improper aims rather than pursuing justice or legitimate governmental objectives.  The United States respectfully submits this *amicus* brief to address one example of such weaponization: the unlawful practice by a partisan bloc of Commissioners at the Federal Election Commission (FEC) of facilitating private enforcement of the Federal Election Campaign Act (FECA) against politically disfavored groups by concealing FEC action on administrative complaints filed by those groups' opponents.  This unlawful concealment spawned this and numerous other cases in this Circuit, and that abuse of process should inform this Court's consideration of the issues in this appeal.

# STATUTORY BACKGROUND

**1.**  Courts have repeatedly underscored the high stakes of the FEC's enforcement work:  "Unique among federal administrative agencies," the Commission has "as its sole purpose the regulation of core constitutionally protected activity—the behavior of individuals and groups only insofar as they act, speak and associate for political purposes."  *Van Hollen v. FEC,* 811

F.3d 486, 499 (D.C. Cir. 2016) (cleaned up). Thus, "every action the FEC takes implicates fundamental rights." *Id.* The FEC also "must decide issues charged with the dynamics of party politics, often under the pressure of an impending election." *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981). As a result, the threat of "erroneous deprivations of rights" and "partisan misuse" is inherent in its work. *Combat Veterans for Cong. Political Action Comm. v. FEC*, 795 F.3d 151, 156 (D.C. Cir. 2015).

Two "safeguards" in FECA therefore aim to "reduce the risk that the Commission will abuse its powers." *Id.* at 153. *First* is the FEC's bipartisan makeup: six members, no more than three of whom may be affiliated with the same political party. 52 U.S.C. § 30106(a)(1). *Second* is the requirement that four members must vote to take each in a series of specific actions before the FEC may wield its investigatory and enforcement powers. *Id.* 30106(b)(1), (c). These progressive steps follow an administrative complaint alleging that a "violation" of FECA "has occurred," *id.* § 30109(a)(1), and include:

(i) a finding of "reason to believe" a violation has occurred, *id.* § 30109(a)(2);

(ii)    a finding of "probable cause" a violation has occurred, *id.* § 30109(a)(4)(A)(i);

(iii)    an "attempt" to address the "violation by informal methods of conference conciliation, and persuasion, and to enter into a conciliation agreement," *id.*; and

(iv)    "a civil action," *id.* § 30109(a)(6)(A).

*See Combat Veterans*, 795 F.3d at 154. These actions help develop and narrow the issues before the agency, and repeatedly ensure that a bipartisan majority of Commissioners authorizes moving the ball forward. *See Campaign Legal Ctr. v. 45Committee, Inc.*, 118 F.4th 378, 381–83 (D.C. Cir. 2024).

**2.** As a backstop where the Commission erroneously dismisses an administrative complaint or "fail[s] . . . to act on such complaint during the 120-day period beginning on the date the complaint is filed," FECA also permits limited private enforcement. 52 U.S.C. § 30109(a)(8)(A); *see id.* § 30109(a)(1). This "unusual provision" in "our system of separated powers" permits an aggrieved party to seek enforcement directly against the respondent to that administrative complaint in federal court. *CREW v. FEC*, 993 F.3d 880, 882 (D.C. Cir. 2021).

But only in limited circumstances.  Not only must a court first determine and "declare that the dismissal of the complaint or the failure to act is contrary to law" in a suit brought against the FEC.  52 U.S.C. § 30109(a)(8)(C).  It must also give the FEC "30 days" "to conform with such declaration."  *Id.*  Only if the FEC "fail[s] to act" and then "fail[s]" to conform may the aggrieved party bring "a civil action to remedy the violation involved in the original complaint."  *Id.*  This Court has held that failure to satisfy these "preconditions" forecloses a "citizen suit;" and that acting includes taking "some cognizable enforcement step under the statute in response to the complaint," such as deadlocking on a reason-to-believe vote.  *45Committee, Inc.*, 118 F.4th at 391–92.

**3.**  Although added to FECA in 1976, this citizen suit provision appears to have gone unused until 2018.  *CREW v. Am. Action Network*, 410 F. Supp. 3d 1, 7 (D.D.C. 2019), *on reconsideration*, 590 F. Supp. 3d 164 (D.D.C. 2022), *appeal docketed*, No. 22-7038 (D.C. Cir.); *see* Federal Election Campaign Act Amendments of 1976, Pub. L. No. 94-283, § 313(a)(9)(C), 90 Stat. 475, 485 (1976).  Around that time, a partisan bloc of Commissioners began to "engage[ ] in a strategy across multiple matters . . . of deliberately voting against administratively closing files, appearing in court, or making

records public[ ] in order to artificially trigger FECA's citizen-suit provision." *Campaign Legal Ctr. v. Iowa Values*, 691 F. Supp. 3d 94, 99 (D.D.C. 2023); *see* FEC, *Statement of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III Regarding Concluded Enforcement Matters* (May 13, 2022) (hereinafter, *Statement Regarding Concluded Enforcement Matters*) (describing strategy).[1]  By "leav[ing matters] officially sealed in secrecy" and precluding the FEC General Counsel from notifying the parties, this bloc "t[ook] advantage of [FECA's provisions] to essentially open the door for outside advocacy groups to directly sue campaigns in federal court."  JA614.

A district court in this Circuit held that this "failure to disclose deadlocked reason-to-believe votes" is "unlawful."  *Heritage Action for Am. v. FEC*, 682 F. Supp. 3d 62, 66 (D.D.C. 2023), *aff'd on other grounds sub nom. Campaign Legal Ctr. v. Heritage Action for Am.*, No. 23-7107, 2025 WL 222305 (D.C. Cir. Jan. 15, 2025).  And, as discussed further below, numerous Judges of this Court and the district court have expressed their

---

[1] https://www.fec.gov/resources/cms-content/documents/Redacted_Statement_Regarding_Concluded_Matters_13_May_2022_Redacted.pdf

own concern over the scheme and its impacts on courts and parties alike. But that has not cured the unlawful concealment scheme's effects. Across over a dozen FEC matters and over a dozen more district court actions and appeals to this Court, victims of this scheme have continued to expend their and the courts' resources trying to undo the damage. *See Statement Regarding Concluded Enforcement Matters* n.2 (identifying FEC matters subject to the scheme, including those at issue in this case).

## ARGUMENT

Ending the weaponization of the Federal Government and restoring accountability are priorities for President Trump and Attorney General Bondi. *Ending the Weaponization of the Federal Government*, 90 Fed. Reg. 8,235 (Jan. 20, 2025) (Executive Order 14147); Office of Att'y Gen., *Restoring the Integrity and Credibility of the Department of Justice* (Feb. 5, 2025).[2]

This case is the result of FECA's weaponization by a partisan bloc of FEC Commissioners, who admittedly used an unlawful concealment scheme to surreptitiously enable outside advocacy groups to bring civil enforcement actions against their political opponents—enforcement actions

---

[2] https://www.justice.gov/ag/media/1388506/dl?inline

the FEC had failed to authorize. That context should inform the Court's consideration of the issues in this appeal.[3]

## I. A Bloc Of FEC Commissioners Engaged In Weaponization Of The Federal Government Through Their Unlawful Concealment Scheme.

By creating the appearance of inaction where action undisputedly was occurring, a partisan bloc of FEC Commissioners inappropriately triggered suits against the FEC that the agency could not effectively defend and thereby triggered citizen suits by aligned advocacy groups against their political opponents. *See Statement Regarding Concluded Enforcement Matters* 1 & n.2. This weaponization of FECA's private enforcement mechanism was as intentional as it was improper; and its effects continue today.

**A.** The concealment scheme's architect, Commissioner Ellen Weintraub, openly admitted to its existence and aims, as well as its vulnerability to legal challenge.

---

[3] The United States does not take a position at this time regarding Appellants' specific merits arguments regarding jurisdiction, standing, or Fed. R. Civ. Proc. 60(b).

For example, she lauded the concealment scheme as an "alternative enforcement path" under FECA that was "previously unused."  JA600 (Statement of Commissioner Weintraub).  She made "zero apologies for using every tool [she] can find to get the law enforced" via the novel concealment scheme, *id.*, despite what she recognized as "bad caselaw" from the D.C. Circuit, JA622 (verified Tweets).

Even as cracks began to show in the scheme, Commissioner Weintraub confirmed that she "quite consciously and intentionally cast votes that put these matters on their current paths," that this strategy was "indeed departing from past Commission practice," and that she believed this was a "proper response to changes the D.C. Circuit has made to the law underlying the Commission's dismissals," which she saw as a "series of unfortunate precedents."  JA602 (Supplemental Statement of Commissioner Weintraub) (referencing Appellee's citizen suit, among others)).  Quite apart from the bipartisan, four-vote requirement in FECA, this strategy sought enforcement in the fashion this smaller bloc (but not their colleagues) preferred.

Perhaps surprising in candor (although not substance), Commissioner Weintraub also conceded the scheme's legal vulnerability to

the New York Times: "It is not like I think the courts are automatically going to come to the same decision I would come to . . . But I think it's got a better shot." JA615.

**B.** Fortunately for some victims of the concealment scheme, the District Court for the District of Columbia "conclude[d] that it is unlawful for the Commission to fail to disclose such a deadlock dismissal." *Heritage Action for Am.*, 682 F. Supp. 3d at 66. It was not alone in its disquiet over the bloc's stratagem. Four Judges of this Court described the FEC's conduct as "of great[ ] concern." *CREW v. FEC*, 55 F.4th 918, 921 (D.C. Cir. 2022) (Rao, J., concurring in the denial of rehearing en banc). And multiple other courts described the FEC's conduct as "unseemly" and "disturbing." Mem. 7, *Campaign Legal Ctr. v. FEC*, No. 1:21-cv-0406-TJK (D.D.C. June 6, 2022), Dkt. No. 34; *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-0809-ABJ, 2021 WL 5178968, at *9 (D.D.C. Nov. 8, 2021).

This litigation pressure, accompanied by political pressure,[4] slowly but surely began exposing and ending the concealment scheme. But its

---

[4] This pressure escalated to the most recent Commissioner's Senate confirmation hearing, where she was asked about the concealment scheme and committed to advocating to end it by publicly disclosing FEC votes.

*Continued on next page.*

harmful effects continue.  Especially as, at almost every turn, Judges in this Circuit found opportunities to dispel the scheme's effects inapt because of their procedural posture, victims continued to languish in protracted litigation.  This Court should not repeat that mistake here.  Instead, it should prevent or at least mitigate the continued effects of FECA's weaponization.

## II.    This Case Is Emblematic Of FEC Weaponization That Needs To Be Corrected.

Commissioner Weintraub and her counterparts alike have identified the matters here as ones subject to the unlawful concealment scheme. JA601 (Weintraub statement identifying "MURs 7427, 7497, 7524, and 7553 (National Rifle Association of America Political Victory Fund, et al.)"); *Statement Regarding Concluded Enforcement Matters* n.2 ("MURs 7427, 7497, 7524 & 7553, Nat'l Rifle Ass'n of Am. Political Victory Fund, *et al.*").  And so far, the scheme has worked. *See* FEC, *Statement of Reasons of Commissioner Ellen L. Weintraub*, MURs 7427, 7497, 7524, 7553, 7558, 7560, 7621, 7654 & 7660 (Sept. 30, 2022) (supporting this failure-to-act suit and the resultant

*See Hearing before the Senate Committee on Rules and Administration*, 117th Cong., 2d Sess., 7 (2022) (S. Hr'g 117-237).

citizen suit).[5]  Appellants have been subjected to over seven years of proceedings before the FEC and federal courts.

All this lawfare despite the FEC's numerous actions on the underlying administrative complaint.  *See 45Committee*, 118 F.4th at 391 (defining action to include a "cognizable enforcement step under the statute in response to the [administrative] complaint").  The FEC both (i) acted on the administrative complaint in February 2021 by holding multiple reason-to-believe votes, and (ii) confirmed those actions during the 30-day period of conformance in October 2021, in addition to taking a *further* action.  *See* JA379 (Tr. 5:19–6:22) (FEC counsel describing February votes and October 26 executive session at which Commissioners (i) considered the matters and made "no apparent changes in those positions," and (ii) "took an additional vote on whether to close the file").  By that time, "the two commissioners who had voted [in February] to find no reason to believe . . . [also had] submitted to the administrative record their statement of reasons."  JA379 (Tr. 6:11–16); *see* JA562–72 (statement of reasons).  And it appears the FEC continued engaging with the

_____

[5] https://www.fec.gov/files/legal/murs/7427/7427_66.pdf

administrative complaint between February and November 2021 in other ways.  *See* Appellants' Opening Br. 22.

That should have ended things, but the unlawful concealment scheme's effects still linger here.  Upending the scheme Congress enacted in FECA and allowing political opponents to weaponize its private right of action is an abuse of process, the continued effects of which this Court should prevent.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

 */s/ Charles E.T. Roberts*
CHARLES E.T. ROBERTS
  *Counsel to the Assistant Attorney*
    *General*
  *Civil Division, Room 3617*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1141*
  *charles.roberts2@usdoj.gov*

January 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,112 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

 */s/ Charles E.T. Roberts*
Charles E.T. Roberts

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ *Charles E.T. Roberts*
Charles E.T. Roberts