## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

GIFFORDS,

*Plaintiff-Appellee*,

v.

FEDERAL ELECTION COMMISSION,

*Defendant-Appellee*,

———————————————

NATIONAL RIFLE ASSOCIATION OF AMERICA, et al.

*Appellants*.

———————————————————

On Appeal from the United States District Court
for the District of Columbia, No. 1:19-cv-01192-EGS

### REPLY BRIEF FOR APPELLANTS

Charles R. Spies
1825 Eye Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 466-5964
Facsimile: (844) 670-6009
cspies@dicksinsonwright.com

Robert L. Avers
Daniel C. Ziegler
350 S. Main Street, Ste 300
Ann Arbor, MI 48104
(734) 623-1672
ravers@dicksinsonwright.com
dziegler@dicksinsonwright.com

*Counsel for Appellants National
Rifle Association of America &
National Rifle Association of
America Political Victory Fund*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. IV

GLOSSARY........................................................................................ VI

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................1

ARGUMENT ........................................................................................2

    I.    The lower court erred by declining to assess its own jurisdiction, which it lost in February 2021. ........................2

        A.    Federal district courts may not ignore jurisdictional defects. ........................................................................4

        B.    This case became moot in February 2021. ................9

            1.    Giffords was entitled to and received FEC "engagement with the merits" of its complaints. ............9

            2.    Giffords was not entitled to a "dismissal" or "final" agency action. ................................11

            3.    The "deadlock dismissal" theory is irrelevant here.......12

            4.    This case was moot from February 23, 2021 forward........................................13

    II.    This appeal is properly before the Court...........................15

        A.    This appeal is procedurally proper..........................16

        B.    This appeal is jurisdictionally proper.....................17

        C.    Courts must "assume standing" where necessary to address jurisdictional flaws....................................18

    III.    The NRA has Rule 60 standing under *Grace*. ................18

        A.    The NRA diligently challenged subject-matter jurisdiction. ......................................................18

            1.    The Motion was timely................................19

            2.    The NRA has diligently challenged subject-matter jurisdiction since January 2022. .................20

            3.    Giffords is not prejudiced by the timing of the Motion........................................22

        B.    The NRA is a proper Rule 60 movant under *Grace*. ..............23

|   | 1. | The non-adversarial proceedings below led to a judgment *solely* for use against the NRA. | 23 |
|---|---|---|---|
|   | 2. | Giffords is using the judgment here to pursue a separate judgment against the NRA. | 24 |
|   | 3. | The judgment here is the predicate for Giffords's suit against the NRA. | 25 |
| C. |   | The parties lacked sufficient adversity. | 26 |
|   | 1. | The parties were aligned on the key legal question and the outcome sought. | 26 |
|   | 2. | The FEC continued processing the complaints following its February 2021 reason-to-believe votes. | 27 |

CONCLUSION .................................................................................28

CERTIFICATE OF COMPLIANCE .................................................30

CERTIFICATE OF SERVICE .........................................................31

# TABLE OF AUTHORITIES

**Cases**

*Agudas Chasidei Chabad v. Russian Fed'n*, 110 F.4th 242 (D.C. Cir. 2024)..........6

*Agudas Chasidei Chabad v. Russian Fed'n*, 19 F.4th 472 (D.C. Cir. 2021)............6

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997)......................1, 7, 8, 15, 18

*Austin v. Smith*, 312 F.2d 337 (D.C. Cir. 1962)......................................................18

*Brown v. United States*, 80 F. App'x 676 (Fed. Cir. 2003) ...................................17

*Canales v. A.H.R.E., Inc.,* 254 F.R.D. 1 (D.D.C. 2008) .........................................22

*CLC v. 45Committee*, 118 F.4th 378 (D.C. Cir. 2024) ............ 1, 2, 9, 10, 11, 13, 15

*CLC v. 45Committee, Inc.*, 666 F. Supp. 3d 1 (D.D.C. 2023) ...............................13

*CLC v. Heritage Action*, 23-7107, 2025 WL 222305 (D.C. Cir. Jan. 15, 2025)
     1, 2

*CLC v. Iowa Values*, 691 F. Supp. 3d 94 (D.D.C. 2023)..................................12, 13

*Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980) ....................................14

*FEC v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986)........................................................14

*Feiss v. United States*, No. 17-1263, 2021 WL 2272421 (Fed. Cl. Apr. 14,
     2021) ................................................................................................................17

*Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180 (2d Cir. 2006)..................23, 25

*Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900)...........................5, 18

*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) ...........................15

*Heritage Action for Am. v. FEC*, 682 F. Supp. 3d 62 (D.D.C. 2023).....................13

*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67 (1983)..........................................9

*Jakks Pac., Inc. v. Accasvek, LLC*, 270 F. Supp. 3d 191 (D.D.C. 2017)..........4, 6, 7

*Kellogg v. Nichols*, 149 F.4th 155 (2d Cir. 2025)....................................................9

iv

*Kocher v. Dow Chemical Co.*, 132 F.3d 1225 (8th Cir. 1997) ...........................16, 17

*Labranche v. Dep't of Def.*, No. 15-2280, 2016 WL 614682 (E.D. La. Feb. 16, 2016) .....................................................................................................................17

*Lommen v. McIntyre*, 125 F. App'x 655 (6th Cir. 2005)........................................17

*Lord v. Veazie*, 49 U.S. 251 (1850).........................................................................25

*Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395 (4th Cir. 2022)................................................................................................27

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978)................................8

*Patten v. D.C.*, 9 F.4th 921 (D.C. Cir. 2021) .........................................................16

*Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110 (D.C. Cir. 2011) ....................19, 22

*Spencer v. Kemna*, 523 U.S. 1 (1998)................................................................3, 15

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) .........................11

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ..................16, 17

*Von Dardel v. Union of Soviet Socialist Republics,* 736 F.Supp. 1 (D.D.C. 1990) .....................................................................................................................20

*Yniguez v. State*, 975 F.2d 646 (9th Cir. 1992) .......................................................8

**Statutes**

52 U.S.C. § 30109(a)(8)......................................................................................10, 24

52 U.S.C. § 30109(a)(8)(A) .....................................................................................11

52 U.S.C. § 30109(a)(8)(C) ......................................................................................13

**Rules**

Rule 60(b)(4).............................. 5, 7, 15, 16, 18, 19, 20, 22, 23, 25, 29

Rule 60(c)............................................................................................................18, 19

# GLOSSARY

**Dkt.** ……………………………………….… Docket entries in the proceedings below. *Giffords v. FEC*, No. 1:19-cv-01192 (D.D.C., Sullivan, J.)

**Citizen Dkt.** …………………………………… Docket entries in *Giffords v. NRA*, No. 1:21-cv-02887 (D.D.C., AliKhan, J.)

**Chabad Dkt.** ……………………………..……..... Docket entries in the district court case *Agudas Chasidei Chabad of United States v. Russian Federation, et al.*, No. 1:05-cv-01548 (D.D.C., Lamberth, J.)

**Chabad II** …………………………………………… *Agudas Chasidei Chabad v. Russian Fed'n*, 19 F.4th 472 (D.C. Cir. 2021)

**Chabad III**……………………………………...…. *Agudas Chasidei Chabad v. Russian Fed'n*, 110 F.4th 242 (D.C. Cir. 2024)

**FECA** …………………………………………..…. Federal Election Campaign Act

**FEC** ……………………………………………..… Federal Election Commission

**NRA** ……………………………………………..… National Rifle Association of America & National Rifle Association of America Political Victory Fund

**REPLYADD**……………………………………..... Reply Addendum

**ADD**…………………………………………….. NRA Brief Addendum

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal raises a fundamental question of Article III jurisdiction: whether courts may refuse to consider their own jurisdiction. Giffords and the FEC largely look past this question, focusing instead on the second issue here: whether the lower court erred by denying the NRA's motion for relief from judgment.

But of the two issues on appeal, the jurisdictional one is by *far* the more important and must be resolved here. *See Arizonans for Off. Eng. v. Arizona,* 520 U.S. 43, 73 (1997) (appellate courts must *assume* standing to satisfy their "special obligation" to satisfy themselves of the lower court's jurisdiction). Despite the primacy of the jurisdictional issue, Giffords and the FEC say hardly a word about it—neither appellee brief even mentions *Arizonans*'s applicability to this appeal.

This Court should reverse the lower court on the grounds it erred by declining to assess its own jurisdiction and because under *CLC v. 45Committee*, 118 F.4th 378 (D.C. Cir. 2024) this case was moot months before the Judgment was entered because the FEC "acted" on Giffords's complaints on February 23, 2021 when it deadlocked on reason to believe. Like in *45Committee* and *CLC v. Heritage Action*, 23-7107, 2025 WL 222305 (D.C. Cir. Jan. 15, 2025), the FEC *acted on* and *rejected* Giffords's allegations in the administrative proceedings, and did so before the lower court authorized Giffords to sue the NRA. This case was therefore moot and the lower court lost its jurisdiction before issuing the Orders and Judgment

Reaching beyond the jurisdictional issue, this Court could also resolve this appeal by holding the lower court wrongly denied the NRA's motion. To begin, the NRA's appeal is procedurally proper. Rule 60 movants may *always* appeal from a denial, which does not bring the judgment up for review but will vacate the judgment if that denial is reversed.

Further, the NRA diligently challenged subject-matter jurisdiction weeks after the lower court entered its Judgment, and while it maintained that argument for years, it was never decided by the lower court. The facts here closely match those of *Grace*, which permitted non-party standing under Rule 60 where parties in one case colluded to use a judgment against a non-party. This Court should reverse the denial of the NRA's Rule 60 motion and remand the case for vacatur of the Orders and Judgment as void for lack of jurisdiction.

## ARGUMENT

### I. The lower court erred by declining to assess its own jurisdiction, which it lost in February 2021.

While this "failure-to-act" suit was pending, the FEC "acted" on Giffords's complaints when it deadlocked at the reason-to-believe stage in February 2021. NRA.Br.12-24. Those deadlocked reason-to-believe votes were unequivocally "acts" under FECA. *See e.g.*, *45Committee*, 118 F.4th 378; *Heritage Action*, No. 23-7107.

That means this case became moot when those reason-to-believe votes were taken in February 2021 because the lower court could no longer grant effectual relief, which means that court lacked subject-matter jurisdiction to issue the Orders and Judgment after those February 2021 deadlocked reason-to-believe votes. *See Spencer v. Kemna*, 523 U.S. 1, 7–8, 18 (1998) (mootness, no matter how it occurs, deprives federal courts of power to act).

Despite the FEC having acted through its February 2021 deadlocked reason-to-believe votes, neither the FEC nor Giffords raised mootness. The lower court subsequently issued its Orders and Judgment, which now serve as the legal basis for Giffords's citizen suit against the NRA. *See* NRA.Br.14-24.

Yet when the NRA brought this jurisdictional defect to the court's attention, it refused to even consider mootness, reasoning that it need not do so. The lower court, however, was obligated to address these jurisdictional defects even when raised by a non-party, and its failure to do so is reversible error.

Giffords and the FEC barely address this issue, choosing instead to frame their response through the second issue (non-party standing under Rule 60) without much analysis regarding the first (whether courts can ignore jurisdictional problems). Apparently, they double down on the notion that federal courts can ignore jurisdictional defects when raised by a non-party. Courts, however, cannot ignore defects in subject-matter jurisdiction, and neither Appellee responds to the binding

authorities requiring courts to address jurisdictional problems when they arise—even if raised by a non-party.

This Court need not even consider the second issue on appeal (non-party Rule 60 standing under *Grace*), *see* NRA.Br.35-36, 54, or whether the lower court lost its jurisdiction due to insufficient adversity between the named parties, *id*. at 47-51, because the court was obligated to address mootness regardless of how it was raised or who raised it. *See Jakks Pac., Inc. v. Accasvek, LLC*, 270 F. Supp. 3d 191, 196 n.4 (D.D.C. 2017), *aff'd per curiam*, 727 Fed. Appx. 704 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 596 (2018) (courts have an independent obligation to confirm subject-matter jurisdiction even if raised by a non-party).

This case became moot when the FEC deadlocked on reason to believe in February 2021, and the lower court erred by refusing to address its jurisdiction when flagged by the NRA. This Court should vacate the lower court's Orders and Judgment for want of jurisdiction.

## A. Federal district courts may not ignore jurisdictional defects.

The lower court misconstrued the *Chabad* opinions to mean that courts can ignore jurisdictional problems when raised by a non-party. NRA.Br.28-30. The *Chabad* opinions, however, do not authorize courts to "look the other way" when they lose jurisdiction. Rather, courts must address defects in subject-matter jurisdiction even if the parties fail to raise the issue. *See Great S. Fire Proof Hotel*

*Co. v. Jones*, 177 U.S. 449, 453 (1900) (courts must "ask and answer" the "first and fundamental question" of whether they have jurisdiction, "even when not otherwise suggested, and without respect to the relation of the parties to it.").

The NRA never argued that "*Chabad II* left the door open for non-party Rule 60(b)(4) challenges," Giffords.Br.20-21. Rather, the premise here is that *Chabad II* does not permit courts to ignore a jurisdictional problem merely because it was raised by a non-party. NRA.Br.27-30.

Giffords's attempts to rehabilitate the lower court's reliance on *Chabad II* are similarly unpersuasive. While Giffords claims there are "no meaningful differences" between this case and *Chabad II*, Giffords.Br.20-21, there is at least one key difference: the district court there—unlike the lower court here—actually addressed the non-party's jurisdictional challenge. *See* Chabad Dkt. 221, at 3 (ADD024) (incorporating analysis of non-party's jurisdictional challenge from corresponding order resolving non-party's companion motion); Chabad Dkt. 220, at 2-4 (ADD018-020) (considering non-party's jurisdictional challenge).

The *Chabad* lower court's opinion regarding the non-party's Rule 60 motion incorporated its jurisdictional analysis because courts are required to confirm subject-matter jurisdiction whenever questioned. *See* Chabad Dkt. 221, at 3 (ADD024) (incorporating jurisdictional analysis); *see also Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 548 (2019) ("courts must consider [jurisdictional defects]

*sua sponte*."). The fact that the lower court in *Chabad II* considered the non-party's jurisdictional challenge even though it denied their Rule 60 motion shows that *Chabad II* and the D.C. District Court's decision in *Jakks*, does not authorize courts to ignore jurisdictional defects when raised by a non-party.

Nor does this Court's decision in *Chabad III* (referenced by Giffords as *Chabad IV*) permit courts to ignore a jurisdictional flaw when raised by a non-party. Giffords.Br.21-22. Rather, *Chabad III* merely held that a jurisdictional challenge does not, in itself, grant Rule 60 standing. *Chabad III*, 110 F.4th at 247.

In fact, it is clear under *Chabad III* that standing to invoke Rule 60(b) is unrelated to a court's duty to confirm its jurisdiction. *See id.* (holding "*regardless* of the district court's jurisdiction . . . [the non-party in that case] could not invoke Rule 60(b) to void the judgments[.]") (emphasis added). The Court's use of "regardless" plainly identifies standing to invoke Rule 60(b) as distinct from courts' jurisdictional obligations. Language licensing courts to ignore jurisdictional problems is nowhere to be found in *Chabad III*, and neither Appellee identified authority permitting courts to ignore jurisdictional defects when raised by someone other than a named party.

The Supreme Court's decision in *Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*, 146 S. Ct. 579 (2026) does not speak to this issue. Giffords.Br.22, 36-37. *Coney* is addressed below, *infra* Section IIIA, as it pertains to timing of Rule 60 motions. But *Coney*, which does not speak to the

foundational concept that federal courts are obligated to confirm their own subject-matter jurisdiction when questioned, involved <u>personal</u> jurisdiction.

Meanwhile, the Supreme Court's decision in *Arizonans*, and the D.C. District Court's decision in *Jakks*, demonstrate that defects in subject-matter jurisdiction must be addressed *even if* raised by a non-party.

In *Jakks*, a non-party sought to vacate a judgment as void for lack of subject-matter jurisdiction. There, the non-party possessed assets that the plaintiff targeted for collection based on a judgment plaintiff obtained against others. *Id.* at 193. Raising the same argument Giffords raises here, the plaintiff claimed the movant lacked standing as a non-party to raise jurisdictional defects. *See id*.

Rejecting that argument, the court held the non-party was entitled to vacatur for lack of jurisdiction, reasoning that "because the Court has an independent obligation to ensure jurisdiction, the exact method of informing the court of a lack of subject-matter jurisdiction—whether through motion under Rule 60(b)(4) or a notification under Rule 12(h)(3)—is not pertinent." *Id.* at 196.

In fact, the court held "it is *irrelevant* whether a party or a *non-party* first alerts the court to potential jurisdictional defects." *Id.* at 196 n.4 (citation omitted) (emphasis added). Thus, *Jakks* eschewed attaching relevance to the procedural vehicle that flagged the jurisdictional defect, and it assumed non-party standing to challenge jurisdiction because it was necessary to ensure jurisdiction.

*Arizonans*, in which the Supreme Court held that a case was moot based on a non-party's mere suggestion of mootness, demands the same result. There, the state attorney general, *which had lost its party status*, filed a "Suggestion of Mootness" on appeal. That suggestion of mootness was met with objection by the appellants and rejected by the Ninth Circuit. *Yniguez v. State*, 975 F.2d 646, 647 (9th Cir. 1992).

The Supreme Court, however, unanimously held: "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts . . . even though the parties are prepared to concede it." *Arizonans*, 520 U.S. at 73 (quotation omitted). "[W]hen the lower court lacks jurisdiction," the Supreme Court reasoned, "we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.*

So, even when there are "grave doubts" as to a *party's* standing, a *non-party*'s mere suggestion of mootness required the court to assume standing to "resolve challenges to the lower court's jurisdiction on mootness grounds." *Id.* at 66 (citation omitted).

The courts in each of the *Chabad* opinions, *Jakks*, and *Arizonans* addressed a defect in subject-matter jurisdiction that was raised by a non-party. As courts of limited jurisdiction, they were obligated to do so. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) (federal jurisdiction "must be neither

disregarded nor evaded."). The lower court here, however, never addressed the defect in its subject-matter jurisdiction despite its continuing obligation to do so.

The defects flagged by the NRA—mootness and insufficient-adversity—are unmistakably jurisdictional. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases[.]"); *Kellogg v. Nichols*, 149 F.4th 155, 161 (2d Cir. 2025) ("Without a case or controversy between adverse parties, a federal court does not have subject matter jurisdiction[.]"). The lower court erred by ignoring those problems, and this court should reverse that decision and vacate the Orders and Judgment as void for lack of subject-matter jurisdiction.

## B.    This case became moot in February 2021.

The failed reason-to-believe votes taken by the FEC on February 23, 2021, were "acts" under FECA. *See*, *e.g.*, *45Committee*, 118 F.4th at 391. Those FEC acts undisputedly occurred *before* the lower court authorized Giffords to sue the NRA, *compare* JA337-341, *with* JA387-388, and *before* the lower court entered its Judgment against the FEC. JA421. This failure-to-act case was therefore moot before the lower court entered the Orders and Judgment.

### 1.    Giffords was entitled to and received FEC "engagement with the merits" of its complaints.

Giffords responds to the mootness issue by claiming it can seek whatever particular "action" it would like under the "failure-to-act" prong of FECA, and that

9

here they sought a "determination" as to whether there was reason to believe FECA had been violated, rather than an "act" under FECA. Giffords.Br.9, 42. But that's both false and inconsistent with FECA.

First, Giffords sought to compel an agency "act" when it filed this "failure-to-act" suit. Giffords sought "injunctive and declaratory relief to compel [the FEC] to act" on Giffords's complaints. JA025 (alleging "the Commission has taken no action on Plaintiff's complaints."). So, any attempt to characterize this case as something other than one where the FEC had "failed to act at all" is false; this case is similar to *45Committee* because the FEC had not acted when the suit was filed but did "act" during the litigation. *See 45Committee*, 118 F.4th at 391.

Moreover, Giffords was not entitled to a "determination" under 52 U.S.C. § 30109(a)(8) because "failure-to-act" plaintiffs are limited in relief they may seek. *See id.* ("failure-to-act" plaintiff may only compel an "act on a pending complaint," which means "to take some enforcement step recognized by the statute," and "a reason-to-believe vote is such a step.") *see also id.* at 392 (failure-to-act plaintiffs are aggrieved "not [by] the Commission's failure to vote in favor of finding reason to believe, but [by] the Commission's failure to hold such a vote at all.").

Nor is it significant that the lower court's conformance order directed the FEC to make a "determination." In fact, the "determination" language in that order

appears to originate from the proposed order that Giffords included with its Motion for Summary Judgment, *compare* JA168, *with* JA373.

"Failure-to-act" plaintiffs like Giffords are limited in the relief they may seek, so orders compelling the FEC to go beyond FECA's limits are, at best, *ultra vires*. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 101–02 (1998). Especially where, like here, the FEC had already done the thing (i.e., held its final reason-to-believe vote) that it allegedly failed to do. *See 45Committee*, 118 F.4th at 392 (rejecting attempt to "require more of the Commission" than a failed reason-to-believe vote because "forcing the Commission to engage with the merits of a complaint [through a failed reason-to-believe vote] is significant in itself: it prods into motion FECA's judicial-review and enforcement scheme.").

### 2. Giffords was not entitled to a "dismissal" or "final" agency action.

Giffords next claims the deadlocked reason-to-believe votes could not moot the case because they were not "final" agency action and did not "dismiss" the complaints. Giffords.Br.41; CREW.Am.Br.14. FECA, however, treats those aggrieved by an alleged failure of the FEC to act on a complaint differently than those aggrieved by the FEC's *dismissal* of a complaint. *See* 52 U.S.C. § 30109(a)(8)(A).

That's why courts reject attempts to morph "failure-to-act" claims under FECA into failure-to-"dismiss" or failure-to-take-"final"-action claims. *See*

*45Committee*, 118 F.4th at 391 (collapsing a "failure-to-act" suit into a "contrary to law" suit challenging the substance of an FEC decision "would make no sense under the statute, which treats a failure to act and a dismissal as distinct."); *see also CLC v. Iowa Values*, 691 F. Supp. 3d 94, 105–06 (D.D.C. 2023) ("§ 30109(a)(8) authorizes a citizen suit where there is 'a failure of the Commission to act,' not where there is a failure of the Commission to take *final* action."); *id*. at 106 ("Whether or not a deadlocked reason-to-believe vote is formally a 'dismissal,' it is still a statutorily significant action."). Giffords could compel FEC engagement with its complaints and nothing more.

### 3. The "deadlock dismissal" theory is irrelevant here.

While the district courts in *45Committee* and *Heritage Action* relied on what's known as the "deadlock dismissal" theory, *see* Giffords.Br.49; FEC.Br.16, 18-19, 21; CREW.Br.10, the NRA does not do so here.

Under that theory, deadlocked reason-to-believe votes are construed as equivalent to dismissals. *See*, *e.g.*, *Heritage Action v. FEC*, 682 F.Supp.3d 62, 74 (D.D.C. 2023) (citations omitted). The NRA's position here, though, is unrelated to the *dismissal* of complaints; the only applicable "acts" here are the reason-to-believe votes taken on February 23, 2021. FECA treats "a failure to act and a dismissal as distinct," and a failed reason-to-believe vote is an "act" under FECA because it

shows "engagement with the merits" of a complaint. *45Committee*, 118 F.4[th] at 391-392. The NRA's motion relies on the FEC's acts—not on any "deadlock dismissal."

### 4. This case was moot from February 23, 2021 forward.

Finally, the notion that failure-to-act courts must examine the entirety of the FEC's handling of administrative complaints does not alter the mootness analysis. The lower court found the FEC's actions through and including its February 23, 2021 reason-to-believe votes were "substantially justified." JA371. The FEC never took another reason-to-believe vote, FEC.Br.7., and those February 23, 2021 deadlocked reason-to-believe votes were the *final* reason-to-believe votes here and are expressly referenced in the controlling commissioners' statement of reasons as *the* votes serving as the FEC's decision on Giffords's complaints. *See* JA563. The FEC told the court that the statement of reasons was placed in the administrative record within the 30 day conformance period and before the court authorized Giffords to sue the NRA. *See* JA379, (Tr. 6:11-16).

Any effort to distinguish the reason-to-believe votes here from those in *45Committee*, *Heritage Action*, or *Iowa Values* is unpersuasive. *See*, *e.g.*, Giffords.Br.41-45; FEC.Br.19-21; CREW.Br.10-15. The specific deadlocked reason-to-believe vote that constituted an "act" in each of *45Committee*, 118 F.4[th] at 392; *Heritage Action*, 682 F. Supp. 3d 62; and *Iowa Values*, 691 F. Supp. 3d 94, was the *final* reason-to-believe vote in those matters. Thus, the statutorily significant

deadlocked reason-to-believe vote in each of those cases was *the* reason-to-believe vote that served as the FEC's decision in those matters. So too here.

It would make no sense for a deadlocked reason-to-believe vote—a statutorily significant "act" under each of *45Committee*, *Heritage Action*, and *Iowa Values*—to satisfy a court order directing the FEC to "act" but for that same vote to not preclude issuance of a conformance order where, like here, the FEC had not only taken such action, but such action was the *final*, *ultimate* reason-to-believe vote. NRA.Br.32-35. An act that satisfies a conformance order is the same act that, by its nature, would preclude a failure-to-act determination in the first place. To hold otherwise would reverse the logic of *45Committee*.

Neither *FEC v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986) nor *Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980) change the analysis. Giffords.Br.43-45. The lower court *did* examine the totality of the FEC's handling of the complaints, and found that the February 23, 2021 reason-to-believe votes "demonstrate[ed] that the commissioners have carefully considered and understand the facts, legal issues, and interests at stake" in Giffords's complaints. JA371-372. Thus, there was sustained agency attention here.

When the lower court authorized Giffords to sue the NRA, the only thing left for the FEC to do was close the file. JA381-382, (Tr. 8:15-9:6). But failure to "close" the file is not the standard in a "failure-to-act" suit where, like here, plaintiff alleged

both in its complaint and at summary judgment that the FEC had failed to take any action at all. JA151, 156.

From the moment the FEC held those final reason-to-believe votes in February 2021, there was no action left to compel under FECA. *See 45Committee*, 118 F.4th at 392. And because the court could no longer grant effectual relief, the case was moot and the court lacked jurisdiction to issue the Orders and Judgment. *See Spencer*, 523 U.S. at 7-8.

This Court need not even address non-party standing under Rule 60(b)(4), which is distinct from the lower court's obligation to "raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (citation omitted). This case should be remanded for vacatur of the Orders and Judgment as void for lack of jurisdiction.

## II.     This appeal is properly before the Court.

The NRA has standing to appeal, *see* NRA.Br.36-43, and even if it didn't, this Court must assume standing *arguendo* to resolve the lower court's refusal to consider its jurisdiction. *Id*.41-43 (citing *Arizonans*, 520 U.S. at 66). This Court should deny Giffords's motion to dismiss because neither issue on appeal is procedurally barred, and this Court has jurisdiction over both.

**A.     This appeal is procedurally proper.**

Giffords's main argument appears to be that the NRA's Rule 60(b)(4) motion passively draws the final judgment up for review. Giffords.Br.34-38. The NRA's appeal, however, is plainly proper. *See* NRA.Br.36-38; *Patten v. D.C.*, 9 F.4th 921, 929 (D.C. Cir. 2021) (denial of Rule 60(b) motion is appealable).

To be sure, "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010) (citing *Kocher v. Dow Chemical Co.*, 132 F.3d 1225, 1229 (8th Cir 1997)). But *Kocher*, approvingly cited by the Supreme Court, explains that while "[a] party may not use a Rule 60(b)(4) motion as a substitute for a timely appeal," what that means, "[i]n other words," is that "if a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal." *Kocher*, 132 F.3d at 1229. *Kocher* thus held that a "Rule 60(b)(4) motion nevertheless may succeed" if it meets the standard for relief under Rule 60(b)(4). *Id*. at 1230. Simply, appeal from a Rule 60(b)(4) motion does not bring up the judgment, but an order reversing denial of a Rule 60(b)(4) motion vacates a judgment.

Giffords obfuscates *Kocher* and *Espinosa* by citing cases supposedly holding appellate courts cannot "review the underlying final judgment" "when reviewing a

Rule 60(b) denial." Giffords.Br.33. But in each of those cases, unlike here, *the district court reviewed its own jurisdiction*. *See Labranche v. Dep't of Def.*, No. 15-2280, 2016 WL 614682 (E.D. La. Feb. 16, 2016) (dismissing case for lack of subject-matter jurisdiction) (REPLYADD3-6); *Lommen v. McIntyre*, 125 F. App'x 655 (6th Cir. 2005) (reviewing denial of Rule 60 motion regarding lack of jurisdiction); *Brown v. United States*, 80 F. App'x 676 (Fed. Cir. 2003) (same); *Mendelson v. Brown*, 82 F.3d 420 (7th Cir. 1996) (same); *Feiss v. United States*, No. 17-1263, 2021 WL 2272421 (Fed. Cl. Apr. 14, 2021), *aff'd*, No. 2021-1986, 2022 WL 396106 (Fed. Cir. Feb. 9, 2022) (same) (REPLYADD1-2). Each of those cases merely confirmed the holdings of *Kocher* and *Espinosa*—Rule 60 motions are decided on their own terms, separate from jurisdictional issues and direct review of final judgments.

The NRA's appeal is procedurally proper, and this Court must consider the district court's jurisdiction. *See, e.g.,* NRA.Br.36-43 (citing *Arizonans*, 520 U.S. at 73).

## B. This appeal is jurisdictionally proper.

Giffords does not contest, as it initially did, that the NRA has Article III appellate standing. *Compare* Giffords.Motion.10-11 (arguing NRA lacks Article III standing), *with* Giffords.Br.30-38. Instead, Giffords now claims this Court lacks

appellate jurisdiction "over the final judgment." The NRA has not, however, appealed the final judgment. *See* NRA.Br.36-38.

Rather, the NRA appealed the lower court's refusal to consider its own jurisdiction, which it was required to do "even when not otherwise suggested, and without respect to the relation of the parties to it," *Jones*, 177 U.S. at 453. And this Court *always* has jurisdiction when a district court refuses to consider its own subject-matter jurisdiction. *See Arizonans*, 520 U.S. at 73.

## C. Courts must "assume standing" where necessary to address jurisdictional flaws.

Giffords does not respond to the NRA's argument, *see* NRA.Br.41-43, that *Arizonans* controls and this Court must assume the NRA's standing to challenge the lower court's refusal to consider its jurisdiction. *Arizonans*, 520 U.S. at 66 (citation omitted) (resolving jurisdictional question "without first determining whether [appellants had] standing to appeal"). *Arizonans* governs this Court's ability to review the lower court's refusal to consider its own jurisdiction, and this Court should deny Giffords's motion to dismiss.

## III. The NRA has Rule 60 standing under *Grace*.

### A. The NRA diligently challenged subject-matter jurisdiction.

It has been this Circuit's law for more than 60 years that Rule 60(c) "places no time limit on an attack upon a void judgment" under Rule 60(b)(4). *Austin v. Smith*, 312 F.2d 337, 343 (D.C. Cir. 1962); *see also* NRA.Br.43 (citing *Austin* for

same). Shortly after the NRA submitted its brief, the Supreme Court issued its decision in *Coney*. The issue there was whether a Rule 60(b) motion challenging a judgment as void for lack of *personal* jurisdiction was subject to Rule 60(c)'s "reasonable time" requirement, and the court concluded that those "seeking relief under Rule 60(b)(4) must comply with Rule 60(c)(1) and file a motion within a reasonable time." *Coney*, 146 S. Ct. 579, 585.

Giffords claims *Coney* controls the timeliness inquiry here and forecloses the NRA's motion. Giffords.Br.17. *Coney*, however, says nothing about how courts should determine timeliness of Rule 60(b) motions. *See Coney*, 146 S. Ct. 579. Indeed, *Coney* didn't even hold the Rule 60(b) motion there, challenging a *six-year*-old judgment, was untimely. *See generally*, *id*. Rather, *Coney* merely clarifies that Rule 60(b) motions are subject to Rule 60(c)'s timeliness requirements. *Id*. at 585.

Although this Circuit "has not identified a standard for assessing 'reasonable time' under Rule 60(b)," it has expressed approval of the First Circuit's test, which considers (1) the length of delay, (2) the reason for delay, and (3) prejudice to the other parties. *Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1118 n.5 (D.C. Cir. 2011). Each of those factors favor the timeliness of the NRA's motion.

### 1.    The Motion was timely.

Giffords turns Rule 60(c)'s one-year rule—which sets one year as the outer limit for Rule 60(b)(1), (2), and (3) motions—on its head, claiming that Rule

60(b)(4)'s lack of an outer limit subjects it to an even *stricter* time limit. Giffords.Br.28-30. But motions challenging subject-matter jurisdiction have been granted *far* beyond one year. *See Harris v. Hardeman*, 55 U.S. 334 (1853) (granting motion to void eleven-year-old judgment); *Von Dardel v. Union of Soviet Socialist Republics,* 736 F.Supp. 1 (D.D.C. 1990) (granting motion to void three-year-old judgment).

The NRA submitted its motion twenty-six months after entry of judgment, which is one-fifth the time of some successful jurisdictional challenges, *see Hardeman*, 55 U.S. 334, and a year less than courts in this circuit have found reasonable, *see Von Dardel,* 736 F.Supp. 1. The NRA's motion was timely.

### 2. The NRA has diligently challenged subject-matter jurisdiction since January 2022.

While Giffords paints a picture of delay, the NRA consistently raised jurisdictional arguments going back four years now, yet those arguments have remained unaddressed for more than 1,500 days.

The lower court was clearly uncertain whether to authorize Giffords's suit. After quizzing FEC counsel whether closing the file was relevant in a failure-to-act suit (it isn't), the Court took FEC counsel "off the hot seat" and said the issue of whether authorizing a citizen suit was proper would be "a legitimate issue to be raised by defense counsel [in the citizen suit]." JA381-382, (Tr. 8:15-9:10).

That same day, Giffords was authorized to sue the NRA. JA387-388. The NRA timely moved to dismiss Giffords's citizen suit for lack of subject-matter jurisdiction on January 28, 2022, Citizen Dkt. 35 at 19-20 (arguing lack of jurisdiction where FEC's February 2021 reason-to-believe votes were "acts" under FECA). Giffords responded that a failed reason-to-believe vote is not a dismissal, *see* Citizen Dkt. 39 at 34-35—an argument rejected by courts, *supra* Section IB2.

Its motion to dismiss pending months later, the NRA raised the argument again, seeking a status conference after the FEC closed the files. Citizen Dkt. 59 (arguing lack of jurisdiction and seeking an order to show cause why case should not be dismissed). Giffords opposed the motion, claiming there was "no need for the parties to rehash their [motion to dismiss] arguments." Citizen Dkt. 60, at 2. The court agreed, refusing to hold a status conference "[i]n view of the pending motion to dismiss." Citizen Dkt. Minute Order 11/16/2022.

Yet the citizen suit court—which at the time was the same court that handled this case—never considered the jurisdictional arguments because it never decided that motion to dismiss. And it never will, as this Court's decision in *45Committee*, issued nearly 3 years after the NRA raised subject matter jurisdiction in the citizen suit, held that FECA's judicial review requirements are not jurisdictional in a citizen suit. *45Committee, Inc.*, 118 F.4th at 386.

Thus, for the entire 26-month period between entry of judgment and filing its Rule 60 motions, the NRA assumed—as everyone did—that it <u>had</u> challenged subject-matter jurisdiction in a proper venue. So while the NRA began sounding this alarm in January 2022, *still* no court has addressed the jurisdictional issues, and after two years of waiting the NRA raised the alarm via Rule 60(b)(4), too.

### 3. Giffords is not prejudiced by the timing of the Motion.

Giffords alleges prejudice because it's been defending the judgment here for two years. Giffords.Br.30. That's not even true—the NRA's motion was stayed for 9 months pending the outcome of this Court's decision in *45Committee*, at the request of *Giffords*, Dkt. 96—and even then, any claimed prejudice must result from delay to be relevant. *See Canales v. A.H.R.E., Inc.,* 254 F.R.D. 1, 11 (D.D.C. 2008) ("delay in and of itself does not constitute prejudice").

Giffords would have had to defend the lower court's judgment whether the NRA filed its Rule 60 motion the day after the judgment or 10 years later. Moreover, the citizen suit remains in its infancy at the motion to dismiss stage four years after Giffords filed it, presumably due at least in part to the NRA's continuous, yet still unaddressed, jurisdictional objections.

Giffords's lack of prejudice "due to delay" is fatal to their argument. *See Salazar*, 633 F.3d at 1119 (denial of a Rule 60(b) motion "without finding that the

movant's delay has prejudiced the non-moving party" would be "an abuse of discretion"). This Court should find the motion timely and consider its merits.

**B.  The NRA is a proper Rule 60 movant under *Grace*.**

"[S]everal circuit courts have permitted a non-party to bring a Rule 60(b) motion or a direct appeal when its interests are strongly affected." *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 188-89 (2d Cir. 2006). While Giffords disagrees, *see* Giffords.Br.24-26, the lower court proceedings here match those in *Grace* such that the NRA may seek relief under Rule 60(b)(4). NRA.Br.45-54.

In *Grace*, the Second Circuit's decision that Rule 60(b)(4) is available to non-parties rested on three pillars: (1) the plaintiffs entered into a settlement agreement with a judgment-proof defendant, (2) with the intent of using the resultant judgment to collect from a non-party, and (3) plaintiffs attempted to use that judgment as a predicate for a separate suit against that non-party. *Grace*, 443 F.3d at 188. The proceedings below map neatly onto *Grace*'s pillars, and the lower court erred by holding otherwise.

**1.  The non-adversarial proceedings below led to a judgment *solely* for use against the NRA.**

Discussing the first *Grace* pillar, the Second Circuit found that the purpose of a stipulated-settlement between plaintiffs and defendant was to collect from the non-party Rule 60(b) movants. *See Grace*, 443 F.3d at 188. The functional equivalent is present here. The FEC is essentially judgment proof in a failure-to-act suit—the

outcome, barring agency action, is that claimants may directly sue the administrative respondent. *See* § 30109(a)(8); JA614-617 (FECA delay suits "open the door for outside advocacy groups to directly sue" third parties).

While Giffords and the FEC did not settle the case on paper, the FEC was not adverse to Giffords. *See* NRA.Br.12-15 (discussing FEC's redacted defense authorization apparently preventing FEC counsel from raising the winning argument: mootness); 47-50 (same). Intentional or not, the FEC's failure to raise dispositive arguments and inform the court that it *had* processed the complaints resulted in Giffords suing the NRA.

Functionally, that's no different from settlement between a plaintiff and a judgment-proof defendant leading to a judgment that would be weaponized against a non-party, i.e., the first *Grace* pillar.

### 2. Giffords is using the judgment here to pursue a separate judgment against the NRA.

Giffords clearly intended to use this judgment against the NRA. Giffords contends this is "precisely the outcome Congress envisioned," Giffords.Br.26., even though the FEC already *acted on* and *rejected* Giffords's allegations. NRA.Br.11-12; 30-36.

As for the FEC, one commissioner admitted implementing the scheme that led to Giffords suing the NRA. *See* JA601-602; JA573-588 (Commissioner Weintraub admitting to "consciously and intentionally" casting votes resulting in

Giffords's citizen suit against the NRA). Courts, too, have caught on to the scheme's purpose. *CLC v. 45Committee*, 666 F. Supp. 3d 1, 3-4; 6-7 (D.D.C. 2023), *aff'd on other grounds*, 118 F.4th 378 (D.C. Cir. 2024); *Heritage Action*, 682 F. Supp. 3d at 68. There's no question that both parties here took actions to give Giffords a shot at suing the NRA. NRA.Br.8-11; 47-54.

### 3. The judgment here is the predicate for Giffords's suit against the NRA.

*Grace*'s third pillar—use of the judgment against a non-party—is unquestionably satisfied because the failure-to-act judgment here is a necessary predicate for Giffords's citizen suit. *See* § 30109(a)(8)(C).

The *Grace* exception actualizes Rule 60(b)(4), an equitable rule, to combat the inequity of allowing a jurisdictionally marred judgment to harm someone that wasn't a party to the original suit. *See e.g., Lord v. Veazie*, 49 U.S. 251-255 (1850) (vacating jurisdictionally marred judgment as void at request of non-party); *Grace*, 443 F.3d at 188 (same); *Matarese*, 801 F.2d 106 (Rule 60(b)(4) is equitable in nature).

This Court has not foreclosed the application of *Grace*—instead, it has apparently never considered a case where equity required application of the exception. *See* NRA.Br.45-46. This is that case, and *Grace* should apply here.

### C. The parties lacked sufficient adversity.

#### 1. The parties were aligned on the key legal question and the outcome sought.

The lack of adverse legal interests between the parties here is clear from the FEC's failure to make the basic, dispositive argument that its February 2021 deadlocked reason-to-believe votes were "acts" under FECA. The FEC repeats the claim it "routinely updated the district court on the status of the administrative matters, including the votes held by the Commission on those matters." FEC.Br.22. Updates, however, are not arguments, and the FEC never argued this failure-to-act suit was moot because the FEC had acted. *See* NRA.Br.47-51.

The claim that "statements of reasons" are "not 'action' on the administrative complaint" likewise misses the point. FEC.Br.23. Even if drafting a statement of reasons were not an "act" under FECA, it is still *indisputable* evidence the FEC *previously* acted. How could Commissioners draft a statement of reasons explaining the bases for their reason-to-believe vote (and thus the grounds for the FEC's resolution of a complaint) *before* the FEC acted on it? The FEC's actions post-February 23, 2021, e.g., drafting statements of reasons, confirms not only action but the finality of their February 23 reason-to-believe votes. *See* NRA.Br.51-54; *See also* JA599 at fn 1 (referencing Statement of Commissioners Dickerson, Cooksey, and Trainor III stating FEC had concluded these matters "more than a year" before May 2022).

This case lacked requisite adverseness when the Orders and Judgment were issued because the parties agreed on the only relevant question before the court. *Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 408 (4th Cir. 2022) (insufficient adverseness where parties agreed on every *relevant* question before the court); NRA.Br.47-51.

### 2. The FEC continued processing the complaints following its February 2021 reason-to-believe votes.

The FEC's failure to inform the court of dispositive factual information independently supports vacatur. The court's decision granting summary judgment hinged on the perception that—during the period *after* the FEC's February 23, 2021 reason-to-believe votes—the FEC had not "assured the court that it is moving expeditiously to address the claims." JA371. But the FEC *had* continued its engagement with Giffords's complaints by promptly drafting a statement of reasons based on those February 23, 2021, votes. Nevertheless, the lower court's decision gets one thing right—the FEC hadn't "assured the court it [wa]s moving expeditiously," even though we now know it was. NRA.Br.20-22; 51-54.

The FEC never explains why it failed to tell the court that it *was* moving expeditiously and was in fact "done"—the only thing left to do was close the file, which has nothing to do with whether the FEC "failed to act." Instead, the FEC disclaims evidence of collusion.

But one Commissioner publicly admitted, on FEC letterhead and elsewhere, her intention for the FEC to lose this suit. *See* JA601-602. The FEC downplays this evidence, suggesting "[t]he views of a single Commissioner do not represent the views of the Commission as a whole." FEC.Br.25-26. But whether she spoke for the Commission or only herself, Commissioner Weintraub's statements are indisputably *some* evidence of collusion. Likewise, Commissioner Weintraub *claimed her scheme worked*. *See* JA622 (Weintraub tweets); JA599-613 (Weintraub statement). That leaves multiple pieces of evidence that the FEC colluded with Giffords, none of which was addressed by the lower court.

The absence of any indication from the FEC that it continued to process the complaints by drafting a statement of reasons proves this litigation was not adversarial. NRA.Br.51-54. The lower court erred by failing to acknowledge this evidence, and this Court should reverse the denial of the NRA's motion.

## CONCLUSION

This Court should hold the lower court erred by refusing to consider its jurisdiction and that it lacked jurisdiction to enter the Orders dated September 30, 2021 (Dkt. 71) and November 1, 2021 (Dkt. 75) and Judgment entered November 18, 2021 (Dkt. 80 & 81) because the case was mooted when the FEC acted on February 23, 2021. The lower court's Orders and Judgment should be vacated and the case dismissed with prejudice.

This Court need not even address the application of *Grace* because the bases for reversal on mootness grounds are exclusive from the issue of non-party standing under Rule 60(b)(4). *See supra* Section I. If, however, the Court reaches the second issue, then it should reverse the denial of the NRA's Rule 60 motion, vacate the lower court's Orders and Judgment, and remand for dismissal with prejudice.

Dated: March 12, 2026          Respectfully Submitted,

DICKINSON WRIGHT PLLC

*/s/ Charles R. Spies*
   Charles R. Spies

Charles R. Spies
1825 Eye Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 466-5964
Facsimile: (844) 670-6009
cspies@dickinsonwright.com

Robert L. Avers
Daniel C. Ziegler
350 S. Main Street, Ste 300
Ann Arbor, MI 48104
(734) 623-1672
ravers@dickinsonwright.com
dziegler@dickinsonwright.com

*Attorneys for Appellants the National Rifle Association of America & the National Rifle Association of America Political Victory Fund*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because it contains 6495 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Office Word in Times New Roman 14-point font.

*/s/ Charles R. Spies*
Charles R. Spies

## CERTIFICATE OF SERVICE

I certify that on March 12, 2026, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, thereby serving all persons required to be served.

*/s/ Charles R. Spies*
Charles R. Spies

**ADDENDUM**

**TABLE OF CONTENTS**

**Unpublished Cases**

*Feiss v. United States*, No. 17-1263, 2021 WL 2272421 (Fed. Cl. Apr. 14, 2021)……………………………………………..……………………………1

*Labranche v. Dep't of Def.*, No. 15-2280, 2016 WL 614682 (E.D. La. Feb. 16, 2016)……………………………………………..………………………....3

2021 WL 2272421
Only the Westlaw citation is currently available.
United States Court of Federal Claims.

Robert E. FEISS, M.D., Plaintiff,
v.
The UNITED STATES, Defendant.

No. 17-1263
|
Filed: April 14, 2021

**ORDER**

Loren A. Smith, Senior Judge

**\*1** The plaintiff has been unfairly treated by government action. That is clear from the evidence. However, courts are given certain powers by Congress to do certain things. They are not roving commissions to right wrongs as they see fit. If it were in the Court's power to right the wrong in this case, it would certainly order the government to pay the plaintiff what it owes him. But it is not. An explicit statute orders the Court not to review the agency's decision in this matter. This takes away the Court's power to remedy the wrong done to the plaintiff by the agency. The Supreme Court decision *Maine Community Health Options v. UnitedStates*, 140 S. Ct. 1308 (2020), cited by the plaintiff, does not help. In that case, the Supreme Court determined that one group of temporary statutes and some legislative history cannot alter the meaning of a specific statute's command. That, unfortunately, reinforces the Court's decision here because the clear command is to not review the agency's decision.

On September 15, 2017, plaintiff filed his Complaint in this Court, alleging that the government breached its contractual duty by wrongfully withholding incentive payments owed to him through the Patient Protection and Affordable Care Act's ("ACA") Primary Care Incentive Payment Program ("PCIP"), in violation of 42 U.S.C. § 1395*l*(x), 42 C.F.R. § 414.80, and the parties' implied contract. *See generally* Complaint, ECF No. 1. Plaintiff bases the government's nonpayment upon the Centers for Medicare and Medicaid Services ("CMS") clerical error that misclassified his primary specialty designation, rendering him ineligible for payments under the PCIP program. *Id.* at 4. On November 14, 2017, defendant filed its Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), arguing, inter alia, that 42 U.S.C. § 1395*l*(x)(4) explicitly precludes judicial review of CMS' identification of primary care practitioners and that plaintiff has failed to establish a valid claim for breach of implied contract. Defendant's Motion to Dismiss at 7, 9, ECF No. 6. On May 30, 2018, the Court granted defendant's Motion to Dismiss, finding that it "lacks the necessary subject-matter jurisdiction to entertain plaintiff's claims, [as] review of those claims is statutorily barred by 42 U.S.C. § 13951(x)(4)[,]" and "plaintiff has failed to allege the elements of an implied contract." Opinion & Order Granting Defendant's Motion to Dismiss at 5,7, ECF No. 14 [hereinafter "Opinion & Order"].

On February 26, 2021, plaintiff filed his Motion to Vacate pursuant to RCFC 60(b)(6), requesting that the Court vacate its prior ruling dismissing his Complaint based upon an intervening change in decisional law. *See generally* Plaintiff's Motion to Vacate Judgment of Dismissal, ECF No. 16. In that Motion, plaintiff argues the following: (1) the Supreme Court's recent decision in *Maine Community HealthOptions* "cut[s] the core" out of this Court's prior ruling, (2) plaintiff has faced extraordinary circumstances that warrant relief under RCFC 60(b)(6), and (3) plaintiff has filed this Motion within a reasonable time. *Id.* at 1, 7, 15; *see generally Maine Cmty. HealthOptions*, 140 S. Ct. 1308. Specifically, plaintiff alleges that *Maine Community Health Options* requires this Court to vacate its prior ruling because, in that case, the Supreme Court held that the government "cannot hide behind a statute to sidestep paying that which it owes." *Id.* at 12. Plaintiff avers that defendant did exactly that

REPLYADD001

by justifying its nonpayment through 42 U.S.C. § 13951(x)(4), a statute that prohibits judicial review of CMS' identification of primary care practitioners. *Id.*

**\*2** On March 12, 2021, defendant filed its Response arguing the following: (1) a post judgment change in the law in itself is "generally insufficient to establish extraordinary circumstances for Rule 60(b)(6) relief," (2) regardless, *Maine Community Health Options* "offers no basis to change [this Court's] result," and (3) plaintiff "has not brought [his] [M]otion within a reasonable time under RCFC 60(c)(1)." Defendant's Response to Plaintiff's Motion to Vacate Judgment of Dismissal at 5, 7, ECF No. 17 (citations omitted). Principally, defendant argues that *Maine Community Health Options* is irrelevant to the issues in plaintiff's case because it "did not involve an explicit statutory bar to judicial review, [but] rather, [ ] dealt with the availability of a Tucker Act cause of action." *Id.* at 5. On March 19, 2021, plaintiff filed its Reply, reiterating its arguments in support of its Motion to Vacate. *See generally* Plaintiff's Reply in Support of its Motion to Vacate Judgment of Dismissal, ECF No. 18. This matter is now fully briefed and ripe for review.

Although the Court sympathizes with plaintiff's financial hardships, upon careful review of the parties' arguments and *Maine Community Health Options*, the Court finds that there has been no applicable intervening change in decisional law. In *Maine Community Health Options*, the Supreme Court was faced with determining, inter alia, if the ACA's Risk Corridors statute "obligate[d] the Government to pay participating insurers the full amount calculated by that statute" and if "the obligation survive[d] Congress' appropriations riders." *Maine Cmty. Health Options*, 140 S. Ct. at 1319. Ultimately, the Supreme Court held that, based upon "well settled principles of statutory interpretation[,] ... the plain terms of the Risk Corridors provision created an obligation neither contingent on nor limited by the availability of appropriations or other funds." *Id.* at 1322–1323; *see also id.* at 1323 ("The Court likewise hesitates 'to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.' ") (citing *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) (internal citations omitted)). Moreover, the Supreme Court held that Congress did not impliedly repeal that obligation in using ambiguous appropriations riders. *Id.* at 1323 ("The Court's aversion to implied repeals is 'especially' strong 'in the appropriations context.' ") (citing *Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 440 (1992)). Taken together, the crux of the Supreme Court's determination is that the clear meaning of a statute cannot be modified by vague congressional intent.

In plaintiff's case, the ***only*** applicable statute at issue expressly bars judicial review of CMS' identification of primary care practitioners. *See* 42 U.S.C. § 13951(x)(4) ("There shall be no administrative or judicial review ... respecting the identification of primary care practitioners."). As the text in the above referenced statute is emphatically clear, the Court finds that *Maine Community Health Options* only bolsters this Court's prior ruling that it lacks the necessary subject-matter jurisdiction to entertain plaintiff's claims. While not dispositive on the motion at bar, the Court notes that in its prior ruling it indicated that the Risk Corridor cases, that were at the time under appeal, would "not [be] dispositive of the Court's ultimate decision." Opinion & Order at 6 n.1. As the Court has found that *Maine Community Health Options* provides no basis to vacate its prior ruling dismissing plaintiff's Complaint, the Court need not address the parties' remaining arguments. Accordingly, and after careful consideration of the filings, the Court hereby **DENIES** plaintiff's Motion.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed.Cl., 2021 WL 2272421

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works. REPLYADD002

Labranche v. Department of Defense, Not Reported in Fed. Supp. (2016)

2016 WL 614682

2016 WL 614682

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

Jamie LABRANCHE

v.

DEPARTMENT OF DEFENSE, Inspector General

CIVIL ACTION NO. 15-2280

|

Signed February 16, 2016

**Attorneys and Law Firms**

Jamie Labranche, Laplace, LA, pro se.

Jason M. Bigelow, U. S. Attorney's Office, New Orleans, LA, for Department of Defense, Inspector General.

## ORDER AND REASONS

SECTION "J" (1)

CARL J. BARBIER, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is a Motion to Dismiss filed by Defendant, the Department of Defense, Inspector General ("Defendant"). (*See* Rec. Docs. 11 and 16.) Plaintiff Jamie LaBranche ("Plaintiff"), a pro se litigant, filed suit against Defendant alleging violations of The Inspector General Act of 1978, Title VII, and the Federal Tort Claims Act. (*See* Rec. Doc. 1.) The Department of Defense now seeks dismissal of all of Plaintiff's claims based on lack of subject matter jurisdiction or, alternatively, failure to state a claim. (*See* Rec. Doc. 11.) For the following reasons, the Court GRANTS Defendant's motion and dismisses Plaintiff's complaint, without prejudice, for lack of subject matter jurisdiction.

## BACKGROUND AND PROCEDURAL HISTORY

The following is a brief summary of the facts and allegations discernable from Plaintiff's complaint. Plaintiff was an employee of Goodwill Industries ("Goodwill"), [1] a contractor of the Department of Defense at the Belle Chase Naval Air Station ("the base"). (*See* Rec. Doc. 1-1 at 1.) Concerned that Goodwill was circumventing security protocol on the base and denying its workers due fringe benefits, Plaintiff sent a letter on October 17, 2012, to the Department of the Navy. *See id.* Plaintiff corresponded with employees of Defendant over the following weeks. (*See* Rec. Doc. 1-1 at 29–36.) Plaintiff also apparently sent communications to officials at the U.S. Attorney's Office. (*See, e.g.*, Rec. Doc. 1-1 at 16.) According to Plaintiff, at least one employee of Defendant notified Goodwill of Plaintiff's disclosures at some point in October or early November. (*See* Rec. Docs. 1 at 2 and 1-1 at 78.) On November 16, 2012, Plaintiff filed suit against Goodwill. (*See* Rec. Doc. 1-1 at 12.) On November 19, 2012, Plaintiff sent a letter to a Navy official complaining about a leak of his protected disclosures to Goodwill by an employee of Defendant. *See id.* at 18. On November 30, 2012, Goodwill terminated Plaintiff's employment as an alleged reprisal for Plaintiff's disclosures to Defendant. *See id.* at 12.

REPLYADD003

**Labranche v. Department of Defense, Not Reported in Fed. Supp. (2016)**

2016 WL 614682

Plaintiff's communication with employees of Defendant carried on for some time after. (*See generally* Rec. Doc. 1-1.) In addition to the suit against Goodwill, it appears at some point in late 2012 that Plaintiff communicated with Defendant to initiate a whistleblower reprisal investigation pursuant to 10 U.S.C. § 2409. (*See* Rec. Doc. 1-1 at 28, 36.) While the whistleblower reprisal investigation was ongoing, Plaintiff agreed to a settlement of his suit against Goodwill on April 18, 2013. *See* Rec. Doc. 1-1 at 87– 101; *see also LaBranche v. Goodwill*, No. 12-2786, Rec. Doc. 21 (E.D.La. 4/18/2013) (Feldman, J.) (minutes of settlement conference reflecting settlement reached). Plaintiff alleges and references email exhibits to support that he agreed to the settlement at the order of another employee of Defendant, with assurances that Defendant would carry on the reprisal investigation. (*See* Rec. Doc. 1 at 2–3.)

**\*2** On May 15, 2013, the office of the Naval Inspector General sent a notice to Plaintiff stating that it was closing the matter after investigative authorities concluded upon preliminary inquiry that appropriate security protocol was followed at the base. (*See* Rec. Doc. 1-1 at 23.) In June 2014, Defendant released a report of its whistleblower investigation, concluding that Goodwill terminated Plaintiff's employment for reasons other than the protected disclosures Plaintiff made to Defendant. (*See* Rec. Doc. 1-1 at 129–37.)

On or around July 1, 2014, Plaintiff complained to Defendant through a "Defense Hotline" that—in contravention of assurances that Plaintiff would be protected from reprisal—Defendant's employee(s) had released Plaintiff's identity to Goodwill, which led to Goodwill's retaliatory termination. (*See* Rec. Doc. 1-1 at 159.) The "Quality Assurance and Standards Internal Review Division" appears to have subsequently interviewed Plaintiff, reviewed the documents and information provided by Plaintiff, and completed a report concluding that no misconduct by employees of Defendant occurred. (*See* Rec. Doc. 1-1 at 159–60.) While significant portions of the November 3, 2014, report are redacted, it appears the Internal Review Division concluded that, at least, Plaintiff's identity was not directly released to Goodwill and that "although no one should guarantee" against reprisal, any such assurance made to Plaintiff by an employee of Defendant would not constitute misconduct. *See id.*

While not mentioned in his initial complaint, Plaintiff subsequently filed an official tort claim with Defendant on December 28, 2014. (*See* Rec. Doc. 17 at 12.) The claim cites October 24, 2012 as the date of the tort. *See id.* Defendant disputes that Plaintiff actually submitted the claim and has submitted a declaration of one its employees stating that the employee has conducted a diligent search, yet was unable to track down the December 28, 2014, claim. (*See* Rec. Doc. 22-1.) Plaintiff filed the instant suit on June 23, 2015. (*See* Rec. Doc. 1.)

On August 3, 2015, before Defendant answered Plaintiff's complaint, Plaintiff filed a motion for summary judgment. (*See* Rec. Doc. 6.) Before answering or responding to Plaintiff's motion for summary judgment, Defendant filed the instant motion to dismiss. (*See* Rec. Doc. 11.) On September 16, 2015, the Court issued an order that it would consider the issue of subject matter jurisdiction before considering the motion for summary judgment. (*See* Rec. Doc. 16.) On November 23, 2015, Plaintiff moved for leave to file an amended complaint to add from United States Attorney Jim Letten, Assistant United States Attorney Sharon Smith, and the Department of Justice as defendants. (*See* Rec. Doc. 25.) Finding the amended complaint futile for lack of subject matter jurisdiction, the magistrate denied Plaintiff's motion to amend. (*See* Rec. Doc. 29 at 3.)

## STANDARD OF REVIEW

As a threshold matter, the Court notes that it interprets pleadings and briefs of pro se litigants liberally "to afford all reasonable inferences which can be drawn from them." *In re Tex. Pig Stands, Inc.*, 610 F.3d 937, 941 n.4 (5th Cir. 2010). Rule 12(b)(1) motions allow parties to challenge the subject matter jurisdiction of a district court to hear a case. FED. R. CIV. P. 12(b)(1). A district court can assess whether it has subject matter jurisdiction based upon any of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof rests on the party asserting jurisdiction. *See id.* In assessing a Rule 12(b)(1) motion, a district court may consider matters of

REPLYADD004

Labranche v. Department of Defense, Not Reported in Fed. Supp. (2016)

2016 WL 614682

fact that appear in dispute, but should grant the motion only if it appears the party asserting jurisdiction can prove no set of facts that would establish jurisdiction. *See id.*

## DISCUSSION

**\*3** While Plaintiff makes claims under The Inspector General Act, Title VII, and the Federal Tort Claims Act, only the tort claim merits detailed discussion. Neither the Inspector General Act nor Title VII give Plaintiff a cause of action against Defendant in this case. The plain language of the Inspector General Act makes clear that it protects only employees of certain federal government establishments, not employees of federal contractors. *See* 5 U.S.C. App. §§ 7(a)–(b), 12(2). Furthermore, nothing in the plain language of Inspector General Act suggests that the United States has waived its sovereign immunity. *See Williams v. McCausland*, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992). [2]

The plain language of Title VII also makes clear that it does not provide Plaintiff with grounds for relief against Defendant in this case. Again, Title VII provides a cause of action against *employers*. *See* 42 U.S.C. §§ 2000e-2, 2000e-16. Furthermore, even if Defendant had been Plaintiff's employer, nothing indicates that Defendant took retaliatory actions against Plaintiff on account of "race, color, religion, sex, or national origin." *Id.* The Court does not have subject matter jurisdiction under either the Inspector General Act or Title VII.

What remains is Plaintiff's claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). A tort claim against the United States must be presented to the appropriate federal agency "within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, or notice of final denial of the claim by the agency to which it was presented. 28 U.S.C. § 2401(b). Should the appropriate agency not make final disposition of the claim within six months of the claim being filed, the claimant has the option of deeming administrative remedies exhausted and bringing suit in district court. *See* 28 U.S.C. § 2675(a); *see also Ramming*, 281 F.3d at 162. A claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *See Ramming*, 281 F.3d at 162 (internal quotation omitted).

In this case, Plaintiff alleges the tort—defendant revealing to Goodwill that he had made protected disclosures to Defendant— occurred October 24, 2012. *See* Rec. Doc. 17 at 12. A November 19, 2012, communication from Plaintiff to a Navy official reflects Plaintiff's purported knowledge that an employee of Defendant had leaked to a supervisor at Goodwill Plaintiff's disclosures to Defendant. (*See* Rec. Doc. 1-1 at 18.) Even assuming the date of injury actually occurred on November 30, 2012 (when Plaintiff's employment was terminated) [3] and even assuming Plaintiff did actually file an administrative tort claim with Defendant, the claim was not filed until December 28, 2014—more than two years after the date of the injury. [4] Because it is reasonable to conclude that Plaintiff's claim accrued before December 28, 2012, the Court does not have subject matter jurisdiction over Plaintiff's tort claim.

## CONCLUSION

**\*4** Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss* **(Rec. Doc. 11)** is **GRANTED** as to Defendant's challenge that the district court lacks subject matter jurisdiction over this case; Plaintiff's complaint is **DISMISSED** without prejudice.

## All Citations

Not Reported in Fed. Supp., 2016 WL 614682

REPLYADD005

Labranche v. Department of Defense, Not Reported in Fed. Supp. (2016)

2016 WL 614682

---

### Footnotes

1    Plaintiff's complaint often states that his employer was "Goodworks"; however, supporting exhibits indicate his actual employer was Goodwill Industries. (*See* Rec. Doc. 1-1 at 2.) The exact name of Plaintiff's employer does not matter for the purposes of this Order and Reasons. The Court proceeds by referring to the employer as "Goodwill."

2    Plaintiff's brief in opposition to Defendant's motion to dismiss raises the argument that Defendant also violated 10 U.S.C. § 2409. (*See* Rec. Doc. 17 at 2.) While that statute does protect whistleblowing employees of federal contractors from retaliation, it does not afford such employees with a cause of action against the United States. *See* 10 U.S.C. § 2409(c) (2). Instead, it affords a whistleblowing employee who has exhausted administrative remedies with a cause of action against the retaliating federal contractor. *See id.*

3    The Court notes that Plaintiff makes reference to Defendant's involvement in his lawsuit against Goodwill. Other than the conclusory allegation that an employee of Defendant caused Plaintiff to settle his lawsuit, the complaint and attached exhibits provide no further factual allegations suggesting Defendant in any way "ordered" Plaintiff to settle his lawsuit against Goodwill. (Rec. Doc. 1 at 2; *see also* Rec. Doc. 1-1 at 101, 95–122.) The Court concludes that it is not reasonable to infer from Plaintiff's complaint that he alleges a tort as to defendant's alleged involvement in his lawsuit against Goodwill. If anything, the email exhibits included in the complaint demonstrate that Plaintiff had an ongoing awareness of the injury giving rise to a possible tort claim against Defendant. (*See, e.g.*, Rec. Doc. 1-1 at 102 (employee of Defendant asking Plaintiff on October 16, 2013, to notify Defendant in the case he decides to pursue a claim against Navy Civil contracting officer), 108 (Plaintiff asking for update on January 31, 2014, and noting his awareness of and concern about filing deadlines), and 111 (Plaintiff advising Defendant on February 27, 2014, of his intent to "move in" on Civil Navy contracting officer.)) Furthermore, it is not apparent that Plaintiff's alleged December 28, 2014, administrative claim complained about the settlement. Accordingly, the Court finds it reasonable to conclude that Plaintiff's claim accrued at the latest on November 30, 2012.

4    Even assuming for the sake of argument that Plaintiff's July 1, 2014, hotline complaint constituted the filing of a tort claim within the two year period of limitation, Plaintiff became aware of the end result of that complaint on December 19, 2014, yet did not file the instant complaint until June 23, 2015. (*See* Rec. Docs. 1 and 1-1 at 158–60.) While close, that means that more than six months passed between Plaintiff becoming aware of Defendant "denying" the merits of his claim and Plaintiff filing suit. *See* 28 U.S.C. § 2401(b). It may be that Plaintiff had the good faith belief for months or even years following the accrual of his claim that a tort claim against Defendant was unnecessary to vindicate his rights, since he was pursuing other means of protecting his interests. (*See* Rec. Docs. 1 at 2 and 1-1 at 28 (describing plaintiff's lawsuit against Goodwill and defendant's whistleblower reprisal investigation.)) However, even if equitable factors existed to suggest a judge-made tolling of the limitation period might be appropriate in this case, district courts do not have equitable authority when it comes to statute of limitations as they apply to private citizen suits against a sovereign. *See Ramming*, 281 F.3d at 165.

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.